UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAYMOND YEE,<br><br>      Plaintiff,<br><br>vs.<br><br>UBS O'CONNOR, LLC AND UBS GLOBAL ASSET MANAGEMENT,<br><br>      Defendants. | )<br>)<br>)<br>)  Case No. 07 C 7150<br>)<br>)  Judge Marovich<br>)<br>)  Magistrate Judge Schenkier<br>)<br>) |

## ANSWER AND AFFIRMATIVE DEFENSES

Defendants UBS O'CONNOR, LLC ("O'Connor") and UBS GLOBAL ASSET MANAGEMENT ("GLAM") (collectively referred to as "UBS" or "Defendants"), by their attorneys, Neal, Gerber & Eisenberg LLP, hereby answer the Complaint in the above-captioned case as follows:

**Paragraph 1 reads as follows:** This Court has jurisdiction of this case pursuant to 29 U.S.C. § 626(c)(1), in that this is an action brought under the Age Discrimination in Employment Act of 1967, as amended.

**ANSWER:** Defendants admit the allegations in Paragraph 1, but deny they violated 29 U.S.C. § 626, or any other statute, law or ordinance.

**Paragraph 2 reads as follows:** Plaintiff has exhausted all administrative requirements to bring this lawsuit. Raymond Yee has filed a timely charge of discrimination with the United States Equal Employment Opportunity Commission, which cross-filed the charge with the Illinois Department of Human Rights. He has waited 60 days before filing this complaint, as required by 29 U.S.C. § 626(d).

**ANSWER:** Defendants admit the allegations in Paragraph 2.

**Paragraph 3 reads as follows:** This Court has venue under 28 U.S.C. § 1391 because a substantial part of the events or omissions that underlie this complaint took place here.

**ANSWER**: Defendants admit the allegations in Paragraph 3, but deny they violated 29 U.S.C. § 626, or any other statute, law or ordinance.

**Paragraph 4 reads as follows:** Plaintiff Raymond Yee is a former employee of defendants UBS O'Connor, LLC and UBS Global Asset Management.

**ANSWER**: Defendants admit that Raymond Yee is a former employee of O'Connor. Defendants deny the remaining allegations in Paragraph 4.

**Paragraph 5 reads as follows:** Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 626(b), *et seq.* and 29 U.S.C. § 216 (b), *et seq.*

**ANSWER**: Defendants admit the allegations in Paragraph 5, but deny they violated 29 U.S.C. §§ 216, 626, or any other statute, law or ordinance.

**Paragraph 6 reads as follows:** Defendants UBS O'Connor, LLC and UBS Global Asset Management (collectively "UBS") are investment banking and securities firms and global asset managers. They are engaged in an "industry affecting commerce" within the meaning of the ADEA.

**ANSWER**: Defendants deny they are an "investment banking" firm. Defendants are without an understanding as to what Plaintiff means that Defendants are "securities firms" and "global asset managers," and therefore denies those allegations. Defendants answer that they are financial services firms that manage funds for clients.

**Paragraph 7 reads as follows:** Mr. Yee was hired by O'Connor & Associates in 1989 as a senior analyst.

**ANSWER**: Defendants admit the allegations in Paragraph 7.

**Paragraph 8 reads as follows:** In 1992, Mr. Yee was promoted to the position of Director/ Senior Analyst.

**ANSWER**: Defendants admit the allegations in Paragraph 8.

**Paragraph 9 reads as follows:** In around 1995, O'Connor & Associates was acquired by Swiss Bank Corporation, which subsequently merged with UBS.

**ANSWER:** Defendants denies the allegations in Paragraph 9. In 1992, O'Connor was acquired by Swiss Bank Corporation which then merged with Union Bank of Switzerland in 1998.

**Paragraph 10 reads as follows:** UBS O'Connor LLC is a unit within the Alternative and Quantitative Investments Division within UBS Global Asset Management.

**ANSWER:** Defendants deny the allegations in Paragraph 10. O'Connor is a unit within GLAM's Alternative and Quantitative Investment platform.

**Paragraph 11 reads as follows:** In 1997, Mr. Yee was promoted to the title of Executive Director.

**ANSWER:** Defendants admit the allegations in Paragraph 11.

**Paragraph 12 reads as follows:** Since 1999, Mr. Yee has been in charge of the health-care sector of the hedge fund portfolios operated within UBS O'Connor LLC.

**ANSWER:** Defendants admit that since 2000, Plaintiff has managed investments in the health care sector for O'Connor.

**Paragraph 13 reads as follows:** During the course of his employment, in addition to earning these promotions, he also earned bonuses between $100,000 (plus $35,000 in warrants) and $2 million since 1999.

**ANSWER:** Defendants admit that since 1999 Plaintiff earned between $100,000 and $2 million and was granted 3,500 options.

**Paragraph 14 reads as follows:** Mr. Yee was the oldest (D.O.B. June 10, 1952) portfolio manager in his group.

**ANSWER:** Defendants admit that Plaintiff was the oldest analyst/portfolio manager employed by the hedge fund.

**Paragraph 15 reads as follows:** Mr. Yee was supervised by Kipp Schrage effective 1999 until his last day of employment.

**ANSWER:** Defendants admit the allegations in Paragraph 15, except that Kipp Schrage began supervising Plaintiff in 1998.

**Paragraph 16 reads as follows:** For the past several years prior to his termination, UBS did not give Mr. Yee an annual appraisal, objective setting, or development, whereas younger managers were given appraisals, objective settings and development.

**ANSWER:** Defendants deny the allegations in Paragraph 16.

**Paragraph 17 reads as follows:** The UBS system contains appraisals for Mr. Yee for 2005 and 2006, which were only first provided to Mr. Yee in August 2007 after his termination.

**ANSWER:** Defendants deny the allegations in Paragraph 17.

**Paragraph 18 reads as follows:** UBS policy provides for annual salary reviews.

**ANSWER:** Defendants admit the allegations in Paragraph 18.

**Paragraph 19 reads as follows:** Mr. Yee was shown no annual salary reviews since 2001.

**ANSWER:** Defendants deny the allegations in Paragraph 19.

**Paragraph 20 reads as follows:** From around 1999 until his termination, Mr. Yee was excluded by Mr. Schrage from assignments and meetings which are viewed as important at UBS.

**ANSWER:** Defendants deny the allegations in Paragraph 20.

**Paragraph 21 reads as follows:** From around 1999 until his termination, Mr. Yee noticed that younger portfolio managers were given assignments to report to investors, meet with investors, interview job candidates and develop new business, while Mr. Schrage excluded Mr. Yee from these opportunities.

**ANSWER:** Defendants deny that Mr. Schrage excluded Plaintiff from "opportunities" based on Plaintiff's age or for any other reason. Defendants are without knowledge as to the truth or

falsity regarding the allegations as to Plaintiff's personal perceptions, and therefore denies these allegations. Defendants deny any remaining allegations in Paragraph 21.

**Paragraph 22 reads as follows:** Mr. Schrage also took away Mr. Yee's business opportunities.

**ANSWER:** Defendants deny the allegations in Paragraph 22.

**Paragraph 23 reads as follows:** Mr. Schrage gave away Mr. Yee's specialty pharmaceutical area to Mr. Peisert without consultation.

**ANSWER:** Defendants deny the allegations in Paragraph 23.

**Paragraph 24 reads as follows:** Mr. Schrage also directed his subordinate to hire an analyst/portfolio manager for Europe while Mr. Yee was actively running a portfolio in that area; after failing to find a suitable candidate, Mr. Schrage directed the reassignment of the sector to a younger analyst, Daniel Gottwald, who has since left the company.

**ANSWER:** Defendants deny the allegations in Paragraph 24.

**Paragraph 25 reads as follows:** Mr. Robert Apter was a younger portfolio manager who partnered with Mr. Yee in the health-care sector since 1999.

**ANSWER:** Defendants admit that Mr. Apter worked with Plaintiff in the healthcare sector of the hedge fund portfolio since 2000. Answering further, Mr. Apter's date of birth is March 24, 1967. Defendants deny the remaining allegations in Paragraph 25, including that Mr. Apter was a portfolio manager or that he "partnered" with Plaintiff.

**Paragraph 26 reads as follows:** Mr. Yee and Mr. Apter held substantially the same position and accountability as they were partners in managing a portfolio in the health care sector.

**ANSWER:** Defendants deny the allegations in Paragraph 26.

**Paragraph 27 reads as follows:** Initially, Mr. Yee made more money, in base salary and bonuses, than Mr. Apter.

**ANSWER:** Defendants admit the allegations in Paragraph 27.

**Paragraph 28 reads as follows:** Over time, the salary differential reversed. Mr. Yee's relative compensation to Mr. Apter declined substantially over the 1999-2006 time period. Mr. Apter was given annual salary increases over the time period.

**ANSWER**: Defendants deny the allegations in Paragraph 28.

**Paragraph 29 reads as follows:** For 2006, Mr. Yee's incentive compensation was below that of Mr. Apter.

**ANSWER**: Defendant admits that Mr. Apter's bonus was greater than Mr. Yee's bonus in 2006.

**Paragraph 30 reads as follows:** Mr. Yee was denied merit increases on the pretext that the bank does not allow them, while Mr. Apter continued to receive such raises.

**ANSWER**: Defendants answer that Mr. Apter, like Plaintiff, was eligible for merit increases. Defendants admit that Mr. Apter received merit increases. Defendants deny the remaining allegations in Paragraph 30.

**Paragraph 31 reads as follows:** Mr. Schrage also criticized and humiliated Mr. Yee in public.

**ANSWER**: Defendants deny the allegations in Paragraph 31.

**Paragraph 32 reads as follows:** Mr. Schrage criticized Mr. Yee for poor support of other businesses and poor P&L performances, even while other, younger managers were losing as much money or more. Mr. Schrage did not criticize Mr. Apter, even though he shared a portfolio with Mr. Yee.

**ANSWER**: Defendants deny the allegations in Paragraph 32, except that Mr. Schrage criticized Plaintiff for poor P&L performance and other reasons.

**Paragraph 33 reads as follows:** Rather than speaking with Mr. Yee directly, Mr. Schrage refused to communicate with him and instead channeled issues and criticisms through Mr. Apter.

**ANSWER**: Defendants deny the allegations in Paragraph 33.

**Paragraph 34 reads as follows:** When Mr. Yee asked Mr. Schrage about this practice, he responded that he considered any communications to Mr. Apter to be a communication to Mr. Apter and Mr. Yee as a "team." Mr. Schrage never similarly cut Mr. Apter out of communications.

<u>ANSWER</u>:   Defendants deny the allegations in Paragraph 34.

**Paragraph 35 reads as follows:** Mr. Schrage's demeaning behavior and refusal to communicate with Mr. Yee adversely affected Mr. Yee's ability to continue to do an excellent job as a portfolio manager.

<u>ANSWER</u>:   Defendants deny the allegations in Paragraph 35. Answering further, Defendants specifically deny that Plaintiff did "an excellent job" as a portfolio manager.

**Paragraph 36 reads as follows:** In mid 2006, during a weekly meeting, while Mr. Yee was answering Mr. Schrage's questions and criticism on the healthcare portfolio, Mr. Schrage lashed out and publicly criticized him. Mr. Schrage then openly initiated another conversation with Paul Mitchell, a younger analyst.

<u>ANSWER</u>:   Defendants deny the allegations in Paragraph 36.

**Paragraph 37 reads as follows:** In January 2007, Mr. Schrage conducted an annual review with Mr. Apter and criticized him for being too positive on his 360-degree review of Mr. Yee.

<u>ANSWER</u>:   Defendants admit that Mr. Schrage conducted a review with Mr. Apter in January of 2007. Defendants deny the remaining allegations in Paragraph 37.

**Paragraph 38 reads as follows:** In spring 2007, the portfolio that Mr. Apter and Mr. Yee jointly managed lost approximately $17 million, about 3% of the value of the portfolio, which is within the norm for variance for a hedge fund portfolio.

<u>ANSWER</u>:   Defendants deny that Plaintiff and Mr. Apter jointly managed a portfolio. Defendants admit that, in the first half of 2007, Plaintiff lost approximately $18.6 million in the portfolio he managed. Defendants deny that such a loss constitutes "the norm" for "variance of a hedge fund portfolio."

**Paragraph 39 reads as follows:** Shortly thereafter, the portfolio recouped approximately $3 million, and would have recouped most of the losses within the next few months if the portfolio was left intact.

**ANSWER**:     Defendants deny the allegations in Paragraph 39.

**Paragraph 40 reads as follows:** The small percentage of loss in the fund that Mr. Yee and Mr. Apter managed was concentrated only in the last 16 months (2006 and 2007) and was an ordinary and short term variance.

**ANSWER**:     Defendants deny the allegations in Paragraph 40.

**Paragraph 41 reads as follows:** In reviewing performance, such ordinary fluctuations would normally be compared to Mr. Yee's long track record of earning money for the fund.

**ANSWER**:     Defendants admit that, when appropriate, employees' performance shortcomings may be considered in the context of their employment history, depending on the seriousness of the shortcoming at issue. Defendants deny the remaining allegations in Paragraph 41.

**Paragraph 42 reads as follows:** Before noon on April 20, 2007, Mr. Schrage confronted Mr. Yee about the need to "do something," but did not confront Mr. Apter.

**ANSWER**:     Defendants deny the allegations in Paragraph 42. Answering further, Defendants state that on or around April 20, 2007, Mr. Schrage spoke with Plaintiff about the losses in his portfolio and informed Plaintiff that he would be placed on probation, pending the improvement of his work performance.

**Paragraph 43 reads as follows:** Mr. Schrage threatened Mr. Yee with probation (which is the first step toward termination) unless Mr. Yee agreed to accept a severance package, but emphasized that he would recommend against probation because it is official and inflexible.

**ANSWER**:     Defendants deny the allegations in Paragraph 43.

**Paragraph 44 reads as follows:** Mr. Schrage represented that it would be necessary for him to add another health care team.

**ANSWER**:     Defendants deny the allegations in Paragraph 44.

**Paragraph 45 reads as follows:** Mr. Yee declined to accept the probation or severance package.

ANSWER:   Defendants admit the allegations in Paragraph 45.

**Paragraph 46 reads as follows:** On May 11, 2007, the company sent a letter that Mr. Yee's final day of work would be July 31, 2007.

ANSWER:   Defendants admit the allegations in Paragraph 46.

**Paragraph 47 reads as follows:** Mr. Yee attempted to continue to work, but was informed that he would not be allowed to return to work and that his personal belongings would be returned to him.

ANSWER:   Defendants admit that though Plaintiff remained officially employed and received all pay and benefits until July 31, 2007, he was informed that he was not required to continue reporting to work.

**Paragraph 48 reads as follows:** UBS instantly hired another healthcare analyst/portfolio manager, Chris Shibutani, who was fifteen years younger than Mr. Yee to replace him in the position.

ANSWER:   Defendants admit that it hired Mr. Shibutani on June 23, 2007 to manage the healthcare sector of the hedge fund portfolio. Answering further, Mr. Shibutani's date of birth is July 12, 1963. Defendants deny any remaining allegations in Paragraph 48.

**Paragraph 49 reads as follows:** Mr. Apter did not suffer any repercussions for the loss in the fund.

ANSWER:   Defendants deny the allegations in Paragraph 49.

**Paragraph 50 reads as follows:** In being threatened with termination and probation, Mr. Yee was treated differently than other younger analysts who had similar dollar and percentage short term draw downs in the last three years, including Jason Randolph, Michael Braden and Paul Chambers.

ANSWER:   Defendants deny the allegations in Paragraph 50.

**Paragraph 51 reads as follows:** A drop of 3% in any portfolio was a normal event. Normally, a supervisor would be helpful and supportive in addressing this kind of an issue in a portfolio. Instead, Mr. Schrage undermined Mr. Yee's ability to do a good job.

**ANSWER**: Defendants deny the allegations in sentences 1 and 3 of Paragraph 51. Defendants admit that its supervisors, including Mr. Schrage, are helpful and supportive of the portfolio managers including Plaintiff.

### AFFIRMATIVE DEFENSES

1. Plaintiff has failed to mitigate damages.

2. Plaintiff is not entitled to liquidated damages because Defendant did not act in reckless disregard of whether its conduct was prohibited by the ADEA.

3. To the extent that Plaintiff's allegations discuss any discriminatory acts that occurred more than 300 days prior to Plaintiff's filing of his charge of discrimination with the U.S. Equal Employment Opportunity Commission, such allegations are barred as untimely.

4. To the extent that Plaintiff alleges a hostile work environment, such allegations are barred under *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), because Defendant maintains a policy prohibiting discrimination based on age and other protected characteristics and Plaintiff unreasonably failed to take advantage of the procedures set out in this policy.

Dated: February 26, 2008

Respectfully submitted,

UBS O'CONNOR, LLC AND
UBS GLOBAL ASSET MANAGEMENT

By: /s/ David B. Ritter
David B. Ritter

David B. Ritter, Esq.
Sonya Rosenberg, Esq.
Neal Gerber & Eisenberg LLP
Two North LaSalle Street
Suite 2200
Chicago, Illinois 60602
Phone: (312) 269-8000
Fax: (312) 269-1747

## **CERTIFICATE OF SERVICE**

I, David B. Ritter, an attorney, hereby certify that a true and correct copy of the foregoing Defendants' Answer and Affirmative Defenses was sent to the following:

>Paul W. Mollica
>Karen Sheley
>Meites, Mulder, Mollica & Glink
>20 South Clark Street, Suite 1500
>Chicago, IL 60603

via U.S. Mail on February 26, 2008.

>/s/   David B. Ritter
>       David B. Ritter

NGEDOCS: 020258.0002:1491527.3